UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAMERON ARNOLD,

               **Plaintiff,**

v.                                         No. 5:21-cv-640

                                                (TJM/TWD)

**TOYOTA MATERIAL HANDLING, INC.**, As
Successor of Toyota Industrial Equipment MFG.,
Inc.,

               **Defendant.**
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

      Before the Court is Plaintiff's motion for leave to amend. See dkt. # 12. Defendant opposes the motion, and the parties have briefed the issues. The Court will decide the motion without oral argument.

**I.    BACKGROUND**

      Plaintiff initiated this action by filing a Complaint in the Supreme Court of Jefferson County, New York. See dkt. # 1-2. Defendant removed the case to this Court, citing diversity of citizenship as the basis for jurisdiction. See dkt. # 1-1 at ¶ 4. Defendant then filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff had failed to allege facts sufficient to make plausible his right to

1

relief, and that one of his claims was barred by the statute of limitations. See dkt. # 5. The Federal Rules of Civil Procedure would have permitted Plaintiff to file an Amended Complaint without seeking leave of Court. See FED. R. CIV. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course . . . (B) if the pleading is one to which a responsive pleading is required, 21 days after . . . service of a motion under Rule 12(b), (c), or (f)."). Instead, however, Plaintiff filed a motion for leave to amend the Complaint. Defendant responded, arguing that amendment would be futile. The Court will evaluate the motion for leave to amend in the interest in judicial efficiency, since denying the motion to amend would have the same effect in this matter as granting a motion to dismiss that Defendant could file in response to the Amended Complaint that Plaintiff might have filed as a matter of right.[1]

The proposed Amended Complaint concerns injuries that Plaintiff Cameron Arnold suffered while working at Ox Industries in Carthange, New York on November 20, 2018. See Proposed Amended Complaint ("Amend. Complt."), Exh. E to Plaintiff's Motion for Leave to Amend, dkt. # 12-7, at ¶ 21. On that day, Plaintiff's co-worker was operating a 2006 Toyota Forklift behind the Plaintiff. Id. at ¶ 23. At a some point, "a roll of industrial paper fell off the forklift and crushed Plaintiff's left leg." Id. Plaintiff suffered "grave injuries including an amputation of his left leg." Id. at ¶ 23.

Plaintiff's proposed Amended Complaint alleges that Defendant Toyota Material Handling, and/or Toyota Industrial Engineering Manufacturing, Inc. ("Toyota"), "designed, manufactured, distributed, and sold a Toyota Forklift" at some point before 2015, and

---

[1]Because of this procedural posture, Defendant's motion to dismiss the original Complaint will be denied as moot.

2

entered "it into the stream of commerce." Id. at ¶ 11. Plaintiff further alleges that "Defendants warrantied that the forklift would be fit for its ordinary and intended particular use." Id. at ¶ 12. He also contends that Defendants had "a duty to design, manufacture, inspect, and distribute the forklift in a careful manner such that it was not unreasonably dangerous to persons or property." Id. at ¶ 13.

Plaintiff further alleges that, "[u]pon information and belief, Defendants were aware that it was common for users in the industry to use the forklift to lift/move large rolls of materials including paper." Id. at ¶ 14. Defendants also allegedly knew "that using the forklift in such a manner to lift large rolls of material was a dangerous and hazardous use and such use caused serious personal injuries." Id. at ¶ 15. At the time Defendants manufactured the forklift, Plaintiff claims, "attachment options" were "available such as 'paper roll attachments' and automatic clamp leveling equipment" that would make the forklift safe to use when lifting large rolls of paper. Id. at ¶ 16.

Plaintiff alleges that Defendants failed to warn of the dangers of using that forklift on large rolls of paper. Id. at ¶ 17. Defendants, he claims, did not put warning labels on the forklift that advised "that it should not be used to handle large rolls of materials and that it should only be used with a roll attachment of clamp leveling equipment." Id. at ¶ 18. Defendants further failed to warn that failing to use such equipment "could result in serious injury or death." Id. Plaintiff alleges "[u]pon information and belief" that "Defendants marketed, sold, and distributed" the "forklift as being intended to handle large roll materials with no attachments or clamp leveling equipment." Id. at ¶ 19. The instruction manual also allegedly failed to contain such warnings. Id. at ¶ 20.

The proposed Amended Complaint contains three causes of action that all sound in

products liability. Plaintiff alleges negligence, strict liability, and a failure to warn.

Defendants oppose Plaintiff's motion for leave to amend. The parties have briefed the issues, and the Court will address the motion.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "leave to amend the pleadings should be 'freely give[n] . . . when justice so requires.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)). Generally, courts in this Circuit have permitted "'a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" Id. (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d. Cir. 1993)). Still, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

At issue here is whether permitting amendment of the Complaint would be futile. "[T]he standard for leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scot. Grp., 783 F.3d 383, 389 (2d Cir. 2015). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS

Defendants argue that Plaintiff has not alleged facts sufficient to make plausible his claims, which all sound in product liability under New York law. They contend that Plaintiff "fails to allege how the subject forklift was negligently or improperly designed or manufactured as to make it unreasonably dangerous, or why the warnings accompanying the device were inadequate."

The case involves claims of negligence in a products liability context. "To make a prima facie case for negligence in New York, a plaintiff must show (1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of duty by failure to use reasonable care so that a product is rendered defective, i.e., reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." Colon v. BIC USA, Inc., 199 F.2d 53, 82 (S.D.N.Y. 2001).

Plaintiff here alleges different types of strict products liability. In New York, "[a] manufacturer who places into the stream of commerce a defective product which causes injury may be liable for such injury." Amatulli v. Delhi Constr. Corp., 77 N.Y.2d 525, 532, 571 N.E.2d 645, 648 (1991). Defects in a product "may consist of a mistake in manufacturing, an improper design or the inadequacy or absence of warnings for the use of the product." Id. "To recover for injuries caused by a defective product, the defect must have been a substantial factor in causing the injury, and 'the product must have been used for the purpose and in the manner normally intended or in a manner reasonably foreseeable.'" Hartnett v. Chanel, Inc., 97 A.D.3d 416, 419, 948 N.Y.S.2d 282, 285 (1st

5

Dept. 2012) (quoting Amatulli, 77 N.Y.2d at 532). Plaintiff appears to allege each of these types of products liability claims.

In opposing the motion to amend, Defendants point to evidence outside the pleadings and argue that Plaintiff's proposed amended pleading is futile in several ways. The Court will address each of Defendants' arguments in turn.

The Court notes that Defendants' arguments rely on materials outside the pleadings. Defendants include in their briefing and briefing papers excerpts from the owner's manual and an accident report produced by the Occupational Health and Safety Administration ("OSHA"). Their briefing quotes portions of these documents. The Court notes that this case is in the posture of a motion to dismiss, and not a motion for summary judgment. At this stage of the litigation, "[c]onsideration of materials outside the complaint is not entirely foreclosed," but the court considers such materials only under certain conditions. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). While the Court can consider materials "integral" to the complaint, such as a contract in a contract action, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. The documents that Defendants provide are not the sort of the documents the Court will consider at this stage of the litigation, particularly in a case that involves the adequacy of warnings that the Defendants provided. The adequacy of warnings is not proved by their existence, and Plaintiff will be required to develop a record to prove what failings existed. Considering the warnings without that additional record is not appropriate. Similarly, Plaintiff's version of the accident may be different than the one provided in the accident report cited in Defendants' briefing. Resolving such conflicts is not appropriate at

6

this stage.

Thus, the Court will not consider these documents in determining whether Plaintiff has alleged facts sufficient to make his right to recovery plausible. As the Second Circuit Court of Appeals has stated, "the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue. But a court at the motion-to-dismiss "stage . . . is not engaged in an effort to determine the true facts." Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016). In deciding a Rule 12(b)(6) motion, "[t]he issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." Id. After all, "[i]f the complaint is found sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version." Id.

The Court will consider each of Defendants' arguments in turn.

### i. Duty

Defendants first contend that "[t]here are no facts upon which to impose a duty on" Toyota. They allege that "[t]here is no relationship between Defendant TMH and the Plaintiff or Plaintiff's employer Ox Industries." The proposed Amended Complaint, Defendants insist, does not contain any facts that demonstrate that Defendants were aware of the sale of the forklift from the original owner to Plaintiff's employer, and offers no factual allegations to show that Defendants were aware of how Ox Industries intended to use the forklift. Besides this lack of knowledge about how the forklift was to be used by Ox Industries, Defendants also contend that Ox Industries violated OSHA rules by failing "to select the optional equipment and attachments depending on its particular use and environment." According to Defendants, federal regulations place the burden on Ox Industries to contact Defendants about changes in use for the forklift and the modifications

that such changes might require.

Other than citing to federal regulations, Defendants point to no case law to support this argument. Defendants do not point to any legal or factual deficiency in the proposed Amended Complaint, but instead cite to evidence they have provided to argue that Plaintiff cannot prove that Defendants had any duty to him. Whatever the evidence may reveal, "manufacturers of defective products may be held strictly liable for injury caused by their products, i.e., they may be liable regardless of privity, foreseeability or reasonable care and a product may be considered defective due to a mistake in manufacturing process, defective design or inadequate warnings about the use of the product." Smith v. 2328 Univ. Ave. Corp., 52 A.D.3d 216, 217 (1st Dept. 2008). In a products liability case, as here, "the duty, broadly speaking, is defined in one of two ways[.]" In re "Agent Orange" Prod. Liab. Litig., 597 F. Supp. 740, 843 (E.D.N.Y. 1984). If the claim is for "negligence," the manufacturer has "a duty to exercise reasonable care in the design, manufacture and marketing (including warnings and instruction to consumers) or a product[.]" Id. If the claim is for "strict liability," the manufacturer has "a duty not to design, manufacturer or market a defective product–whether or not the defect resulted from the lack of exercise of due care." Id.

In other words, the duty at issue here is the Defendants' duty to manufacture a product safe for its intended use. In the strict liability context, "a 'defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.'" Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, (N.Y. 1983)

8

(quoting Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479 (N.Y. 1980)).  A manufacturer is not always liable for injuries caused by its products; "[w]hile the manufacturer is under a nondelegable duty to design and produce a product that is not defective, that responsibility is gauged at the time the product leaves the manufacturer's hands," and "[s]ubstantial modifications . . . by a third party which render a safe product defective are not the responsibility of the manufacturer."  Robinson, 49 N.Y. 2d at 479.

Plaintiff's proposed Amended Complaint alleges that Defendants designed the product in question, and that they "placed the forklift into the stream of commerce."  Amend. Complt. at ¶ 27.  Plaintiff further alleges that Defendants breached their duty to use reasonable care in designing the product and the warnings on the product.  Id. at ¶ 30.  Plaintiff also alleges that he and his coworkers were the intended users of the forklift, and Defendants placed "in the stream of commerce" a forklift that had design defects.  Id. at ¶¶ 38-41.

The Court finds that such allegations reasonably allege that the Defendants, manufacturers of forklifts, had a duty to design a reasonably safe product for the product's intended and foreseeable users, and that he was one of those users. That Plaintiff has not alleged that he or his employer were in privity with the Defendants is of no matter.  As explained, a manufacturer's duty extends far enough to include the Plaintiff.  Whatever defense that Toyota has with reference to how users may have ignored warnings, modified the product or used the forklift in unintended ways, that defense is not a basis for dismissal at this stage.  Plaintiff has adequately alleged the Defendants had a duty.

### ii.     Alleged Design Defect

Without explaining to which of Plaintiff's claims their argument applies, Defendants

9

next argue that Plaintiff has failed to state a claim because federal regulations do not require Defendants to "distribute the subject forklift 'only . . . with a roll attachment or with automatic clamp leveling or the equivalent thereof.'" Defendant's Response at 11 (quoting Amend. Complt. at ¶¶ 30, 41, 47).

With respect to a design defect, Plaintiff's proposed Amended Complaint alleges that the forklift's:

> 41. . . . design defect included but is not limited to the Defendants being aware that the Toyota Forklift, model number 8FGCU30 was commonly used for handling large rolls of material and that such use was a known hazard which could cause serious injuries, and that Defendants were aware that due to this known hazard, the Toyota Forklift should only be distributed with a roll attachment or with automatic clamp leveling or the equivalent thereof.

Amend. Complt. at ¶ 41.

"'[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use,' and 'whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.'" Hoover v. New Holland N. Am., Inc., 23 N.Y.3d 41, 53-54, 11 N.E.3d 693, 701 (2014) (quoting Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107 (1983)). "A manufacturer can be held liable for selling a defectively designed product because the manufacturer 'is in the superior position to discover any design defects and alter the design before making the product available to the public.'" Scarangella v. Thomas Built Buses, Inc., 93 N.Y.2d 655, 659 (N.Y. 1991) (quoting Voss, 59 N.Y.2d at 107).

The Defendant's argument that amendment to include a design defect claim is futile because no federal regulation required the forklift to include a roll attachment or automatic

10

clamp does not persuade the Court. At this stage in the litigation, the question is whether Plaintiff has alleged sufficient facts to make plausible his right to relief. He has alleged that Defendants designed a product not safe for its intended use. Defendants may be argue at summary judgment or during trial that the product was not unreasonably dangerous and provide support for this position by pointing to federal regulations, but such arguments are for those stages of the case, not this one.

### iii.   Scarangella Test

Finally, Defendants argue that Plaintiff's proposed amendments are futile because Plaintiff has not alleged facts sufficient to meet the test established in Scarangella v. Thomas Built Buses, Inc., 93 N.Y.2d 655, 661 (N.Y. 1991), for proving a design defect and failure to warn with regards to an optional safety feature. Defendants point to the manual provided with the subject forklift to argue that warnings about using the forklift without additional safety devices were adequate.

In Scarangella, the plaintiff, a bus driver, sought damages from a designer of school buses after a bus struck her while backing up in a parking lot. Id. at 657. At the time of the accident, the bus company "offered buyers as an optional safety feature a back-up alarm that would automatically sound when a driver shifted the bus into reverse gear[.]" Id. The president of the company whose bus injured the plaintiff chose not to purchase buses equipped with the back-up alarms. Id. at 657-658. In his deposition, that executive "explained that he was aware that the back-up alarms were available but made a considered decision not to use them." Id. at 658. The trial court precluded evidence on plaintiff's claim that the lack of a standard back-up alarm constituted a design defect; the court found "plaintiff proffered no specific evidence" on that issue. Id. Plaintiff went to trial,

basing her design defect claim on defective mirrors, not the lack of a back-up alarm. Id. The trial judge directed a verdict for the defendant at the close of the evidence. Id.

The Court of Appeals addressed whether the trial court erred in refusing to consider evidence of a design defect with respect to the back-up alarm. The court pointed to design defect cases involving plaintiffs who chose not to purchase optional safety equipment; one court had concluded that "'if knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him.'" Id. at 660 (quoting Biss v. Tenneco, Inc., 64 A.D.2d 204, 207 (4th Dept. 1978)). Other courts came to different conclusions based on the facts of the case. Id. at 660-661 (citing to Rainbow v. Elia Bldg. Co., 79 A.D.2d 287 (1st Dept. 1981); Rosado v. Protor & Schwartz, 66 N.Y.2d 21 (N.Y. 1985)). From these cases, the Court of Appeals established the principle that a:

> product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability. When the factors are not present, there is no justification for departure from the accepted rationale imposing strict liability upon the manufacturer because it "is in a superior position to discover any design defects."

Id. at 661 (quoting Voss, 59 N.Y. at 107) (emphasis in original ).

The Court is not persuaded by this argument either. Scarangella and the factors stated therein may provide an excellent defense once the parties have conducted discovery and established the particular facts of this case. They have not yet done so. The owner's

12

manual, upon which Defendants rely, is not properly before the Court in the context of this motion to amend. The question here is not whether there is evidence that the Defendants could use to argue that the warnings included with the device were adequate, or that there was an optional safety feature of which Plaintiff's employer was aware and chose not to use. The question here is whether Plaintiff has alleged facts sufficient to make plausible his right to relief. Defendants have not offered a basis for denying the motion to amend.[2]

## IV. CONCLUSION

For the reasons stated above, the Plaintiff's motion for leave to amend his complaint, dkt. # 12, is hereby GRANTED. The Defendants' motion to dismiss Plaintiff's original Complaint, dkt. #5, is hereby DENIED AS MOOT. The Clerk of Court is hereby directed to accept Plaintiff's Amended Complaint, dkt. # 12-7, for filing.

**IT IS SO ORDERED.**

Dated: February 10, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

---

[2] The Federal Rules of Civil Procedure permit Defendants to file a motion to dismiss the Amended Complaint once that Amended Complaint is filed and served. The Court would caution, however, that this opinion has answered the question of whether the Amended Complaint alleges facts sufficient to make plausible Plaintiff's right to relief.

13